# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of

JOSEPHENE CHOI,

        Respondent,

and

NATHAN CHOI,

        Appellant.

No. 76551-5-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: November 5, 2018

APPELWICK, C.J. — Upon the dissolution of their marriage, the trial court appointed a special master/arbitrator for all disputes surrounding the sale of Nathan and Josephene Choi's commercial property and implementation of their dissolution decree. Nathan[1] argues that the special master's rulings should be vacated under RCW 7.04A.230, because he exceeded his powers and showed evident partiality. We affirm.

## FACTS

On January 13, 2016, the marriage of Nathan and Josephene Choi was dissolved after a four day trial. In the dissolution decree, the trial court appointed Lawrence Besk as "Special Master/Arbitrator" (special master) to arbitrate all

---

[1] We use first names for clarity.

disputes surrounding the sale of the parties' commercial property and implementation of the decree pursuant to chapter 7.04A RCW.

After the dissolution but before the special master's rulings, Nathan filed a $1,000.00 supersedeas bond with the trial court. He also filed a certificate of service stating that he served Gary Taylor, Josephene's attorney, with notice of the bond. Nathan intended the bond to stay enforcement of the dissolution decree pending his appeal in that case.[2] Josephene never objected to the bond amount.

Nathan did not serve the special master with notice of the bond. Instead, he sent the special master an e-mail stating that there was "a stay." The special master responded to Nathan, stating that nothing had been provided to him confirming that there had been a hearing or that the trial court had approved any bond amount. Absent that information, he stated that the case would proceed.

The special master then issued three rulings involving the parties' commercial property, tax returns, and dissolution decree requirements. Nathan moved to vacate and alternatively modify those rulings. Among his many arguments, he asserted that the reasons the special master gave for his decisions were a direct result of their conflict over the interpretation of RAP 8.1 and Nathan's filing of a $1,000.00 supersedeas bond. He stated that the special master

---

[2] On January 14, 2016, Nathan filed a notice of appeal of the dissolution decree, challenging the parenting plan, denial of his request to relocate, and award of property. In re Marriage of Choi, No. 74569-7-1, slip op. at 7, 2017 WL 1533241 (Wash. Ct. App. Apr. 24, 2017) (unpublished), http://www.courts. wa.gov/opinions /pdf/745697.pdf, review denied, 189 Wn.2d 1032, 407 P.3d 1154 (2018). This court affirmed in all respects on April 24, 2017. Id. at 1.

"unilaterally objected" on Josephene's behalf to him filing the bond and, from that point, "took every opportunity to grant anything requested by Josephene" and ignored all of his "valid concerns." (Boldface omitted.)

At the motion hearing, Josephene's attorney stated that she did not object to the supersedeas bond because Nathan never served her with a copy. The commissioner found that, on its face, the bond amount appeared insufficient, and the bond itself was not properly served on Josephene. The commissioner denied Nathan's motion and confirmed the three orders.

Nathan next moved to revise the commissioner's order, arguing that the special master violated and ignored RAP 8.1, and went beyond his authority by objecting to the supersedeas bond on behalf of Josephene. He also argued that the special master was partial. At the hearing, Nathan explained that he completed the certificate of service himself, but took a third party to Josephene's attorney's office to serve notice of the bond. He stated that the third party, not him, hand delivered the notice to Josephene's attorney. The trial court denied his motion for revision.

Nathan appeals.[3]

_____

[3] In his notice of appeal, Nathan states that he is appealing three orders: (1) the order confirming special master orders; (2) the order re: motion for revision; and (3) the order re: motion for reconsideration. But, the motion for reconsideration he refers to is not in the record. Because the motion is not in the record, we do not consider it on appeal. See State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

DISCUSSION

Nathan makes two main arguments.[4,5] First, he argues that the special master's rulings should be vacated because he exceeded his powers by violating the automatic stay. Second, he argues that the special master's rulings should be vacated because the special master was partial.

Judicial review of an arbitration award is exceedingly limited. Davidson v. Hensen, 135 Wn.2d 112, 118-19, 954 P.2d 1327 (1998). A court may disturb an award only on the narrow grounds listed in RCW 7.04A.230 and only when those grounds appear on the face of the award. Westmark Props., Inc. v. McGuire, 53 Wn. App. 400, 402, 766 P.2d 1146 (1989). This court's review of an arbitrator's award is limited to review of the decision by the court that confirmed, vacated, modified, or corrected that award. Expert Drywall, Inc. v. Ellis-Don Constr., 86 Wn. App. 884, 888, 939 P.2d 1258 (1997). The party seeking to vacate the award bears the burden of proof. Hanson v. Shim, 87 Wn. App. 538, 546, 943 P.2d 322 (1997).

---

[4] Nathan has not expressly challenged the trial court's authority to appoint a special master/arbitrator.

[5] In his reply, Nathan alternatively argues that chapter 7.04A RCW does not apply in this case, because there was never an agreement to arbitrate. He argues that RCW 7.06, which governs mandatory arbitrations, applies instead. But, at the hearing on his first motion, Nathan agreed that RCW 7.04A.230 governs this matter. He cites no authority to support that a trial court lacks authority to authorize arbitration of disputes using the rules of chapter 7.04A RCW. And, he did not raise this argument in his opening brief. We decline to consider issues raised for the first time in a reply brief. See RAP 10.3(c); Sacco v. Sacco, 114 Wn.2d 1, 5, 784 P.2d 1266 (1990).

I. Exceeding Powers

He argues that the special master violated the automatic stay that resulted when he filed the bond. Relying on RAP 8.1, he asserts that upon the filing of a supersedeas bond, enforcement of a trial court decision against a party furnishing that bond is stayed. Therefore, he argues that the special master's November 18, 2016 decision ordering the sale of the parties' commercial building must be reversed.

An arbitrator exceeds his or her powers within the meaning of RCW 7.04A.230(1)(d) when the arbitration award exhibits a facial legal error.[6] Broom v. Morgan Stanley DW, Inc., 169 Wn.2d 231, 240, 236 P.3d 182 (2010). The error, if any, must be recognizable from the language of the award. Federated Servs. Ins. Co. v. Pers. Representative of Estate of Norberg, 101 Wn. App. 119, 124, 4 P.3d 844 (2000). In considering such a challenge, we review only the face of the award to determine whether it manifests an erroneous rule of law or a mistaken application of law. Boyd v. Davis, 127 Wn.2d 256, 263, 897 P.2d 1239 (1995). We do not review the merits of the case or the evidence before the arbitrator. Davidson, 135 Wn.2d at 119. Nor may we extend our review to discern the parties'

---

[6] In Broom v. Morgan Stanley DW, Inc., 169 Wn.2d 231, 240, 236 P.3d 182 (2010), the court held that former RCW 7.04.160(4) (1943), repealed by LAWS OF 2005, ch. 433, § 50 (effective Jan 1, 2006), authorized a reviewing court to vacate an award for a facial legal error. Former RCW 7.04.160(4) allowed an award to be vacated where "the arbitrators exceeded their powers, or so imperfectly executed them that a final and definite award upon the subject matter submitted was not made." Now, RCW 7.04A.230(1)(d) provides that a court shall vacate an award if "[a]n arbitrator exceeded the arbitrator's powers."

intent or interpret agreements underlying the merits of the dispute, because such an act is essentially a trial de novo. Boyd, 127 Wn.2d at 261-62.

We first analyze whether Nathan's filing of a supersedeas bond stayed enforcement of the dissolution decree. Whether the special master exceeded his powers by issuing the November 18, 2016 ruling turns on whether a stay of the trial court's decision was in place. If there was a stay, the special master's ruling ordering the parties to proceed with the sale of their commercial property would exhibit facial legal error.

Under RAP 8.1(b)(2), a party may obtain a stay of enforcement of a decision affecting property "by filing in the trial court a supersedeas bond or cash, or alternate security approved by the trial court pursuant to subsection (b)(4)." The amount of the bond shall be

> the amount of any money judgment, plus interest likely to accrue during the pendency of the appeal and attorney fees, costs and expenses likely to be awarded on appeal entered by the trial court plus the amount of the loss which the prevailing party in the trial court would incur as a result of the party's inability to enforce the judgment during review.

RAP 8.1(c)(2). A party may object to the sufficiency of the bond amount by filing a motion in the trial court. RAP 8.1(e). The party must object within seven days after being served with a copy of the bond and any supporting affidavits. Id.

RAP 8.1 contains no provision regarding proper service of the bond. But, "RAP 18.5 makes it clear that the bond must also be served on all parties . . . . Service is accomplished by serving a party's attorney of record in

accordance with CR 5." 2A KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE RAP 8.1, author's cmt. 3, at 592 (8th ed. 2014). Under CR 5, service upon the attorney "shall be made by delivering a copy to the party or the party's attorney." A person's affidavit of service or a written acceptance or admission of service, both constitute proof of service. CR 4(g)(2), (5). The return, acceptance, admission, or affidavit must state the time, place, and manner of service. CR 4(g)(7).

Nathan filed a certificate of service which states that he hand delivered a copy of the notice to "Gary Taylor." But, Nathan did not personally serve Josephene's attorney with the notice. He told the trial court that a third party, not him, hand delivered the notice to Josephene's attorney. There is no affidavit of service from that third party in the record.

The "Notice of Cash Supersedeas" Nathan filed with the trial court includes a date stamp that states "Copy Received" and the name of Josephene's attorney, "Gary J. Taylor." But, the date stamp does not establish the place and manner of service. And, Taylor denied that he had been served.

The record here does not include a proper affidavit of service, an affidavit from the person who allegedly served Josephene's attorney, or a proper acceptance of service. Because there is no proof of service, Nathan's filing of a supersedeas bond did not stay enforcement of the dissolution decree. Accordingly, the special master did not exceed his powers.[7]

---

[7] Nathan also argues that the special master exceeded his powers by ruling that the amount of his supersedeas bond was insufficient. But, because we find

## II. Evident Partiality

Nathan argues next that the special master was partial. He asserts that there were numerous confrontations between the special master and himself, the bulk of which arose due to the special master "misunderstanding" RAP 8.1 and "changing his role from being a neutral arbitrator to that of Josephene Choi's attorney."

As support, Nathan cites the special master's instruction that he execute warranty deeds for Josephene while requiring Josephene to only execute quitclaim deeds for him, and his failure to impose sanctions on Josephene. He also cites the special master's decision to accept the offer Josephene found to purchase the parties' jointly owned building over the offer Nathan found. Nathan asserts that because Josephene's buyer is his immigration law client, he could lose his Hawaii law license based on the transaction. And, he asserts that the offer he found would net the parties more money and allow them to sell the entire limited liability company, not just the building.

Under RCW 7.04A.230(1)(b)(i), a court shall vacate an arbitration award if there was "[e]vident partiality by an arbitrator appointed as a neutral." Courts have interpreted this statute to mean that "an arbitrator has a general duty to disclose a circumstance or relationship that bears on the question of impartiality where that relationship or circumstance creates a reasonable inference of the presence of

that his filing of the bond did not stay enforcement of the dissolution decree, this argument is moot.

bias or the absence of impartiality." <u>S&S Constr., Inc. v. ADC Props. LLC</u>, 151 Wn. App. 247, 258, 211 P.3d 415 (2009). If such an inference is made, "the complaining party must show the existence of prejudice from the nondisclosure." <u>Id.</u> An arbitrator who does not disclose a known, direct, and material interest in the outcome of the proceeding, or a known, existing, and substantial relationship with a party, is presumed to act with evident partiality under RCW 7.04A.230(1). RCW 7.04A.120(5).

Nathan does not argue that the special master had a material interest in the outcome of the proceeding, or a substantial relationship with a party. Thus, there is no presumption of evident partiality in this case. Instead, Nathan argues that the special master "[became] Josephene Choi's legal counsel" by exceeding his authority, which "set the stage for a very hostile and antagonistic relationship between the arbitrator" and Nathan. He cites e-mails between the two, the special master's failure to impose sanctions on Josephene, the special master's instruction that he execute warranty deeds, and the special master's decision to accept the offer Josephene found to buy the parties' building.

Nathan essentially argues that we should vacate the special master's rulings because he disagrees with them. But, in evaluating partiality, we do not look to the merits of the case or reexamine the evidence. <u>Broom</u>, 169 Wn.2d at 239. The special master's rulings do not facially demonstrate that he was partial. Nathan's argument that the special master became Josephene's legal counsel by

exceeding his authority fails because of the analysis above. Accordingly, the special master did not exhibit evident partiality.

We affirm.

WE CONCUR: